# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| ADAPTIVE MODIFICATIONS, LLC | § § | |
| v. | § § | Civil Action No. 4:18-CV-00864 |
| | § | Judge Mazzant |
| ATLANTIC CASUALTY INSURANCE COMPANY; TRIMARK INSURANCE GROUP, INC.; DELTA GENERAL AGENCY CORPORATION, NORTH TEXAS BRANCH; and DAN MITCHELL a/k/a AGENT NO. 181. | § § § § § § § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiff Adaptive Modifications, LLC's Motion to Remand (Dkt. #10). Having considered the motion and the relevant pleadings, the Court finds that the motion should be denied.

## BACKGROUND

Plaintiff's business purpose is to transform living spaces into functional and accessible homes for the disabled and elderly to promote independent living (Dkt. #10 ¶ 12). Plaintiff's sole member is James Boren (Dkt. #10 ¶ 7). In March 2015, Mr. Boren asked Defendant Dan Mitchell—a retail insurance agent for Defendant Trimark Insurance Group ("Trimark")—to procure a commercial general liability policy for Plaintiff (Dkt. #1 ¶ 7; Dkt. #10 ¶ 12).

Mr. Boren's meeting with Mr. Mitchell was short (Dkt. #10 ¶ 13). Although Mr. Mitchell asked Mr. Boren few questions, Mr. Boren remembers explaining to Mr. Mitchell that he "performs all types of work, including minor plumbing, installation of handrails and wall attachments, attaching faucets and toilets, tilting work in bathroom areas, and all other handyman type of work" on behalf of Plaintiff (Dkt. #10 ¶¶ 12–13). Mr. Boren told Mr. Mitchell that the general commercial liability policy procured for Plaintiff must cover this work (Dkt. #10 ¶ 13).

Mr. Mitchell assured Mr. Boren that he would procure a policy for Plaintiff that covered this work and any damages that might occur (Dkt. #10 ¶ 13). The policy procured by Mr. Mitchell allegedly covers only carpentry work (Dkt. #10 ¶ 13).

To procure Plaintiff's policy, Mr. Mitchell applied to Defendant Delta General Agency Corporation, North Texas Branch ("Delta") to underwrite the policy (Dkt. #1 ¶ 7). Acting as a managing general agent, Delta enabled Defendant Atlantic Casualty Insurance Company ("Atlantic") to issue Plaintiff's policy for a period covering March 13, 2015, through March 13, 2016 (Dkt. #1 ¶¶ 6–7).[1]

In 2015, Plaintiff participated in nonparty Amazon.com Inc.'s ("Amazon") "beta program for services." (Dkt. #1-5 ¶ 10). As part of this program, Amazon contracted Plaintiff to perform handyman-type jobs for customers who ordered products through Amazon. (Dkt. #1-5 ¶ 10). In December 2015, nonparties Mr. and Ms. Haberman ordered a faucet from Amazon and Amazon contracted Plaintiff to install the faucet (Dkt. #1-5 ¶ 10; Dkt. #10 ¶ 18). The faucet later leaked allegedly causing damage to the Habermans' property (Dkt. #1-5 ¶ 10). The Habermans reported the leak to Amazon and Amazon contracted Plaintiff to install a new faucet. After installing the new faucet, Amazon told Plaintiff it would "handle the Habermans' matter." (Dkt. #10 ¶ 20).

In March 2017, the Habermans filed an underlying suit concerning the alleged property damage caused by the leaking faucet (Dkt. #1-5 ¶ 11). The Habermans served Plaintiff with notice of the underlying suit in March 2018 (Dkt. #1-5 ¶ 11). Plaintiff contacted Atlantic requesting Atlantic defend and indemnify Plaintiff in the underlying suit pursuant to the insurance policy (Dkt. #1-5 ¶ 11). Atlantic denied Plaintiff's claim (Dkt. #1-5 ¶ 11).

---

1. Atlantic is "a surplus lines insurer, which means it is an out-of-state insurer, not admitted in Texas, but allowed to issue policies in Texas by working through a Texas-based managing general agent." (Dkt. #1 ¶ 7)

Consequently, on November 5, 2018, Plaintiff sued Defendants in the 219th Judicial District Court of Collin County, Texas (Dkt. #1 ¶ 1; Dkt. #1-5). Plaintiff alleges claims for violations of Chapter 541 of the Texas Insurance Code, violations of Section 17.46(b) of the Texas Deceptive Trade Practices Act ("DTPA"), breach of contract, and negligence against the Defendants (Dkt. #1-5 ¶¶ 12–24). On December 13, 2018, Defendants removed the case to this Court (Dkt. #1). On January 11, 2019, Plaintiff filed its motion to remand (Dkt. #10). Defendants filed a response to the motion on January 28, 2019 (Dkt. #16). Plaintiff did not file a reply in support of the motion.

## LEGAL STANDARD

"Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute." *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). "Only state court actions that originally could have been filed in federal court may be removed to federal court by the defendant." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) (citing 28 U.S.C. § 1441(a)). "In an action that has been removed to federal court, a district court is required to remand the case to state court if, at any time before final judgment, it determines that it lacks subject matter jurisdiction." *Humphrey v. Tex. Gas Serv.*, No. 1:14-CV-485, 2014 WL 12687831, at *2 (E.D. Tex. Dec. 11, 2014) (citations omitted). The Court "must presume that a suit lies outside [its] limited jurisdiction," *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001), and "[a]ny ambiguities are construed against removal and in favor of remand to state court." *Mumfrey v. CVS Pharmacy, Inc.*, 719 F.3d 392, 397 (5th Cir. 2013) (citing *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002)). "When considering a motion to remand, the

removing party bears the burden of showing that federal jurisdiction exists and that removal was proper." *Humphrey*, 2014 WL 12687831, at *2 (quoting *Manguno*, 276 F.3d at 723).

## ANALYSIS

### I. Diversity Jurisdiction

Defendant removed this case pursuant to 28 U.S.C. § 1441 arguing the Court may exercise diversity jurisdiction under 28 U.S.C. § 1332 (Dkt. #1 ¶ 3). The parties do not dispute that complete diversity—required to establish original jurisdiction under § 1332—does not exist as Plaintiff and Defendants Trimark, Delta, and Mr. Mitchell are citizens of Texas (collectively, "Texas Defendants") (Dkt. #1-5 ¶¶ 4, 5–8). However, Defendant Atlantic—a citizen of North Carolina—claims that Plaintiff improperly joined the Texas Defendants to defeat diversity jurisdiction (Dkt. #1 ¶ 3; Dkt. #16).[2] Accordingly, Defendants contend the Court may exercise diversity jurisdiction after dismissing the improperly joined defendants.

### II. Improper Joinder

To avoid removal and to preserve their venue choice, plaintiffs sometimes join non-diverse parties for the sole purpose of defeating diversity jurisdiction. 13F Charles Alan Wright et al., *Federal Practice and Procedure* § 3641.1 (3d ed. 1998). "[T]he improper joinder doctrine constitutes a narrow exception to the rule of complete diversity" allowing a defendant to challenge a plaintiff's attempt to join a diversity-destroying party. *Cuevas v. BAC Home Loans Servicing, LP*, 648 F.3d 242, 249 (5th Cir. 2011) (citing *McDonal v. Abbott Labs.*, 408 F.3d 177, 183 (5th Cir. 2005)). To establish improper joinder, the removing party has the burden to demonstrate either: "'(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court.'" *Smallwood*

---

2. "Improper Joinder" is the same as "fraudulent joinder." In *Smallwood,* the Fifth Circuit adopted "improper joinder" as the preferred term. *See Smallwood v. Ill. Cent. R. Co.*, 385 F.3d 568, 571 n.1 (5th Cir. 2004) (en banc).

*v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc) (quoting *Travis v. Irby*, 326 F.3d 644, 646–47 (5th Cir. 2003)). In other words, if a defendant demonstrates that the plaintiff either fraudulently pleaded jurisdictional facts concerning the non-diverse party or the plaintiff is unable to establish a cause of action against the non-diverse party, the defendant may remove the case under the improper joinder exception to the complete diversity rule.

Under the second prong—inability to establish a cause of action against the non-diverse party—the test is "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant."[3] *Smallwood*, 385 F.3d at 573. Courts resolve this question by conducting a Federal Rule of Civil Procedure 12(b)(6) analysis or piercing the pleadings and conducting a summary inquiry. *River of Life Assembly of God v. Church Mut. Ins. Co.*, 1:19-CV-49-RP, 2019 WL 1468933, at *1 (W.D. Tex. Apr. 3, 2019) (quoting *Smallwood*, 385 F.3d at 573) (citing *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 201 (5th Cir. 2016)).

Courts choose to either perform a Rule 12(b)(6) analysis or pierce the pleadings and conduct a summary inquiry, "but it *must* use one and only one of them, not neither or both." *Int'l Energy*, 818 F.3d at 207 (emphasis in original). If a court chooses the 12(b)(6) route, the court applies the federal pleading standards. *Id.* at 207–08. A court should only choose to pierce the pleadings and conduct a summary inquiry to "identify the presence of discrete and undisputed facts that would preclude [a] plaintiff's recovery against the in-state defendant." *Smallwood*, 385

---

3. There is no improper joinder if the defendants demonstrate that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against *all* the defendants. *Cuevas*, 648 F.3d at 249 (citing *McDonal*, 408 F.3d at 183; *Smallwood*, 385 F.3d at 575). A common-defense argument is more "properly an attack on the merits of the claim, rather than an inquiry into the propriety of the joinder of the in-state defendant." *Id.*

F.3d at 573–74. Under either inquiry, "the motive or purpose of the joinder of the in-state defendants is not relevant." *Id.* The decision concerning whether to apply the 12(b)(6) analysis or to pierce the pleadings and conduct a summary inquiry is within the discretion of the trial court. *Davidson v. Georgia-Pac., L.L.C.*, 819 F.3d 758, 765 (5th Cir. 2016) (quoting *Smallwood*, 385 F.3d at 573). The Fifth Circuit "has consistently found improper joinder where a non-jurisdictional affirmative defense (such as statute of limitations) conclusively bars the plaintiff's claims against the non-diverse defendant." *Flagg v. Stryker Corp.*, 819 F.3d 132, 139 n.32 (5th Cir. 2016) (citing *Boone v. Citigroup, Inc.*, 416 F.3d 382, 391 (5th Cir. 2005); *Bell v. Texaco, Inc.*, 493 F. App'x. 587, 592 (5th Cir. 2012)). If a Court determines that a non-diverse party has been improperly joined to defeat diversity under either inquiry, that party must be dismissed without prejudice. *Int'l Energy*, 818 F.3d at 209.

### III. Summary Inquiry

Defendants allege there is no reasonable basis to predict that Plaintiff can recover against the Texas Defendants as the relevant statutes of limitations bar Plaintiff's claims (Dkt. #16).[4] Plaintiff's Original Petition likely does not meet the federal pleading requirements under Rule 12(b)(6). However, as the presence of discrete and undisputed facts alleged in the Original Petition and learned from the parties' briefing reasonably demonstrates that Plaintiff cannot recover against the Texas Defendants, the Court chooses to pierce the pleadings and conduct a summary inquiry.

#### A. Claims

In the Original Petition, Plaintiff alleges that Defendants collectively committed violations of Chapter 541 of the Texas Insurance Code and the DTPA, breached a contract, and

---

4. Plaintiff cannot argue that a common defense applies to all Defendants. *See Cuevas*, 648 F.3d at 249. Adaptive denied Plaintiff's coverage claim on March 21, 2018 (Dkt. #1-5 ¶ 11). As demonstrated below, the alleged actionable conduct against Adaptative falls within the statutes of limitations.

6

negligently harmed Plaintiff by failing to procure the appropriate insurance coverage for Plaintiff (Dkt. #1-5). Plaintiff pleads its allegations against all Defendants "because an insurance party cannot act without agents." (Dkt. #10 ¶ 17). Plaintiff notes, however, that "this does not mean that Plaintiff cannot, and did not, allege each cause of action specifically against each defendant individually." (Dkt. #10 ¶ 17). Consequently, it is difficult to determine exactly what Plaintiff alleges in the Original Petition. The Court turns to Plaintiff's Motion to Remand to clarify Plaintiff's claims.

In its Motion to Remand, Plaintiff explains:

> This action must be remanded because complete diversity of citizenship between Plaintiff and Defendants Mitchell, Trimark, and Delta does not exist. Plaintiff properly joined Defendants Mitchell, Trimark, and Delta and can *show that it has the possibility of recovering for violations of the Texas Insurance Code, DTPA*, *and negligence against Mitchell* in his capacity as an insurance agent *and against Trimark and Delta under the theory of vicarious liability for Mitchell's negligence*.

(Dkt. #10 ¶ 6) (emphasis added). Plaintiff also "alleges allegations against Mitchell under its Breach of Contract . . . cause of action." (Dkt. #10 ¶ 16). Based on these statements, the Court assumes in this order that Plaintiff intends to prove its Chapter 541, DTPA, negligence, and breach of contract claims against Mr. Mitchell and contends Trimark and Delta are vicariously liable for Mr. Mitchell's negligence. If the summary inquiry demonstrates that there is no reasonable basis to predict that Plaintiff can recover against Mr. Mitchell on its negligence claim, there is also no reasonable basis to predict that Plaintiff can hold Trimark and Delta vicariously liable for Mr. Mitchell's conduct. *See Painter v. Amerimex Drilling I, Ltd.*, 561 S.W.3d 125, 130 (Tex. 2018), *reh'g denied*, (Dec. 14, 2018) (vicarious liability imputes one person's fault on another based on the relationship between them).

7

### B. Mr. Mitchell

Plaintiff claims Mr. Mitchell "was an agent of Defendants when he procured and sold the commercial general liability policy to Plaintiff." (Dkt. #1-5 ¶ 25). Plaintiff alleges Mr. Mitchell represented that the policy "contained benefits that it did not have." (Dkt. #1-5 ¶¶ 9, 20, 23). This representation induced Plaintiff to purchase the policy and led Plaintiff to assume "it was insured against the risk that caused the loss in the underlying suit." (Dkt. #1-5 ¶¶ 9, 20, 23). As a result, Plaintiff contends the Court can reasonably predict that Plaintiff could recover against Mr. Mitchell under its Chapter 541, DTPA, negligence, and breach of contract claims (Dkt. #10 ¶¶ 10–19).

#### i. Chapter 541, DTPA, and Negligence

Atlantic argue there is no reasonable basis to predict that Plaintiff can recover against Mr. Mitchell on its Chapter 541, DTPA, and negligence claims as the relevant statutes of limitations bar Plaintiff's claims (Dkt. #16). Texas law proscribes two-year statutes of limitations for Chapter 541, DTPA, and negligence claims. TEX. INS. CODE § 541.162(a);[5] TEX. BUS. & COM. CODE § 17.565;[6] TEX. CIV. PRAC. & REM. CODE § 16.003(a).[7] The conduct giving rise to Plaintiff's claims against Mr. Mitchell—his procurement of the policy for Plaintiff and his representations concerning coverage under the policy—occurred around March 2015 (Dkt. #1-5 ¶ 9; Dkt. #10 ¶ 13). *See Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 221 (Tex.

---

5. A claim under Chapter 541 must be brought within two years of "the date the unfair method of competition or unfair or deceptive act or practice occurred" or "the date the person discovered or, by the exercise of reasonable diligence, should have discovered that the unfair method of competition or unfair or deceptive act or practice occurred." TEX. INS. CODE § 541.162(a).
6. A claim under the DTPA "must be commenced within two years after the date on which the false, misleading, or deceptive act or practice occurred or within two years after the consumer discovered or in the exercise of reasonable diligence should have discovered the occurrence of the false, misleading, or deceptive act or practice." TEX. BUS. & COM. CODE § 17.565.
7. A negligence claim must be brought "not later than two years after the day the cause of action accrues." TEX. CIV. PRAC. & REM. CODE § 16.003(a); *Dunmore v. Chi. Title Ins. Co.*, 400 S.W.3d 635, 641 (Tex. App.—Dallas 2013, no pet.) (citing *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 514 (Tex. 1998)) ("A cause of action for negligence accrues on the date the negligent injury-producing act is committed.").

2003) (citing *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 514 (Tex. 1998)) ("As a general rule, a cause of action accrues and the statute of limitations begins to run when facts come into existence that authorize a party to seek a judicial remedy."). Plaintiff filed this suit on November 5, 2018 (Dkt. #1-5). As more than two years passed between the accrual of Plaintiff's claims and the filing of Plaintiff's suit, Plaintiff's Chapter 541, DTPA, and negligence claims against Mr. Mitchell are time-barred. *See Kerlin v. Sauceda*, 263 S.W.3d 920, 925 (Tex. 2008) (explaining that claims not brought within the period proscribed by the relevant statute of limitations are time-barred).

Plaintiff responds "that under the Discovery Rule [Plaintiff's] claims accrued in March 2018 when Atlantic Casualty denied coverage to Plaintiff." (Dkt. #10 ¶ 20). "The discovery rule delays accrual [of a plaintiff's claim] until the plaintiff 'knew or in the exercise of reasonable diligence should have known of the wrongful act and resulting injury.'" *Schlumberger Tech. Corp. v. Pasko*, 544 S.W.3d 830, 834 (Tex. 2018) (quoting *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex. 1996)). Plaintiff explains it did not discover its injury until March 2018 as it relied on Mr. Mitchell's representations that the policy covered the handyman-type work described by Mr. Boren to Mr. Mitchell (Dkt. #10 ¶¶ 21–22).

The discovery rule cannot apply here as Plaintiff, in the exercise of reasonable diligence, should have learned of Mr. Mitchell's alleged misrepresentations and the lack of coverage provided by the policy after reading the policy in 2015. "Under Texas law, an insurance agent has no duty to explain policy terms, and the insured has a duty to read his [or her] insurance policy and is bound by its terms even if they were not fully explained." *Avila v. State Farm Fire & Cas. Co.*, 147 F. Supp. 2d 570, 581 (W.D. Tex. 1999) (citations omitted). Plaintiff acknowledges "that it had a duty under Texas law to read the policy it bought and confirm the

coverage provided . . . [but] this does not negate Mitchell's duties to become familiar with [Plaintiff's] business and to procure the correct policy." (Dkt. #10 ¶ 23) (citing *Ins. Network of Tex. v. Kloesel*, 266 S.W.3d 456 (Tex. App.—Corpus Christi 2008, pet. denied)). Plaintiff's argument misses the mark. The question here does not concern Mr. Mitchell's alleged wrongdoing. The issue is whether Plaintiff sought to hold Mr. Mitchell liable for his wrongdoing within the statutory period. Plaintiff did not.

The Court's holding that the discovery rule cannot apply in this case is not novel. In *Glenn*, Calhoun asserted claims under the Texas Insurance Code and DTPA as well as claims for fraud, negligence, and negligent misrepresentation. *Glenn v. L. Ray Calhoun & Co.*, 83 F. Supp. 3d 733, 746 (W.D. Tex. 2015). Calhoun alleged that insurance agents made various misrepresentations to it causing it to choose a policy that exposed Calhoun to greater legal liability than Calhoun expected. *Id.* at 747. Although the parties agreed on the length of the applicable limitations periods, they disagreed as to when the limitations periods began to run. *Id.* Calhoun contended its claims accrued when the insurer denied coverage and not when the insurance agents made the various misrepresentations.[8] *Id.* In response, the third-party defendants argued that Calhoun's claims accrued at the time the policy issued as Calhoun should have learned of the alleged misrepresentations when reading the policy. *Id.* at 747–48. Finding that Calhoun's claims accrued on the purchase date of the policy, the Court noted:

> Several Texas courts have agreed with Third–Party Defendants' view of the law. *See Khoei v. Stonebridge Life Ins. Co.*, No. H–13–2181, 2014 WL 585399, at *7 (S.D. Tex. Feb. 14, 2014) (finding claims insurer misrepresented policy coverage in selling policy accrue when policy is issued); *Steadfast Ins. Co. v. SMX 98, Inc.*, No. H–06–2736, 2009 WL 890398, at *16 (S.D. Tex. Mar. 30, 2009) (stating cause of action based on insurer's misrepresentation or failure to disclose in connection with sale of insurance policy

---

8. Alternatively, Calhoun maintained its claims did not accrue until the underlying suit leading to the denial of coverage was filed. *Glenn*, 83 F. Supp. 3d at 747.

> accrues when policy is issued); *Rangel v. Progressive Cnty. Mut. Ins. Co.*, 333 S.W.3d 265, 269 (Tex. App.—El Paso 2010, pet. denied) (deciding claims based on alleged misrepresentations concerning extent of insurance coverage accrued when plaintiffs purchased the policy); *Mauskar v. Hardgrove*, No. 14–02–00756–cv, 2003 WL 21403464, at *3 (Tex. App.—Hous. [14th Dist.] June 19, 2003, no pet.) (same, stating "[h]ad [plaintiff] read the policies at the time he purchased them, he would have known that the policies were not going to meet his alleged pay-out expectations"). Notably, Calhoun cites no legal authority to the contrary.

*Id.* at 748.

Similarly, in *Hunton*, the plaintiffs alleged violations of the Texas Insurance Code and DTPA as well as claims for breach of contract, fraud and fraudulent inducement, and negligent misrepresentation. *Hunton v. Guardian Life Ins. Co. of Am.*, 243 F. Supp. 2d 686, 695 (S.D. Tex. 2002), *aff'd*, 71 F. App'x. 441 (5th Cir. 2003). The plaintiffs alleged that the insurer misrepresented the amount of the premiums due under the life insurance policy they had purchased. *Id.* at 692. The plaintiffs argued their claims did not accrue until they sustained damages. *Id.* at 697. The insurer responded that the plaintiffs' claims accrued when the insurer issued the policy. *Id.* Examining the discovery rule, the court noted, "even a cursory review of the Policy and Application informs Plaintiffs that [the agent's] oral representations did not accurately reflect the written Policy. The Policy terms thus are easily discoverable." *Id.* at 699. After considerable additional analysis, the court held plaintiffs' claims were time-barred by the relevant statutes of limitations and the discovery rule did not apply. *Id.* at 697–706.

Plaintiff's cited cases do not provide contrary authority (*See* Dkt. #10 ¶¶ 20–26) (citing *Meredith v. Rose*, 05-15-00054-CV, 2016 WL 4205686, at *4 (Tex. App.—Dallas Aug. 9, 2016, no pet.); *Kloesel*, 266 S.W.3d at 481; *Mary'z Mediterranean Cuisine, Inc. v. Blackboard Ins. Co.*, CV H-18-1790, 2018 WL 4080458, at *4 (S.D. Tex. Aug. 27, 2018); *Scott v. Conner*, 403 S.W.2d 453, 457 (Tex. Civ. App.—Beaumont 1966, no writ); *May v. United Servs. Ass'n of Am.*,

844 S.W.2d 666, 669 (Tex. 1992)). *Rose* supports Defendants' position as the court held the discovery rule did not apply, "This evidence shows that the alleged injury—the absence of a home warranty—was readily discoverable by the exercise of diligence." 2016 WL 4205686, at *5. *Kloesel*, *Mary'z*, *Scott*, and *May* discuss agent liability but do not address statutes of limitations, the discovery rule, or the accrual of claims. *Kloesel*, 266 S.W.3d at 481; *Mary'z*, 2018 WL 4080458, at *4; *Scott*, 403 S.W.2d at 457; *May*, 844 S.W.2d at 669.

The issue here is not whether Mr. Mitchell made the alleged misrepresentations or failed to secure the appropriate coverage for Plaintiff. The issue is whether Plaintiff timely sued Mr. Mitchell for these alleged wrongdoings. As Plaintiff, exercising reasonable diligence, should have discovered the misrepresentations and the inadequate coverage provided by the policy after reviewing the policy in 2015, the Court finds the discovery rule inapplicable in this case. Therefore, Plaintiff's Chapter 541, DTPA, and negligence claims accrued in 2015 with the issuance of the policy and are barred by the two-year statutes of limitations. Accordingly, the Court cannot reasonably predict that Plaintiff can recover against Mr. Mitchell on its Chapter 541, DTPA, and negligence claims as the claims are time-barred. Moreover, as the Court cannot reasonably predict that Plaintiff can recover against Mr. Mitchell on its negligence claim, the Court cannot reasonably predict that Plaintiff can recover against Trimark and Delta on its vicarious liability theory.

### ii. Breach of Contract

It is difficult to determine from Plaintiff's Original Petition whether Plaintiff contends Defendants breached the insurance contract by denying Plaintiff's coverage claim or whether Plaintiff alleges Defendants breached a separate contract requiring Defendants to procure appropriate insurance coverage for Plaintiff. Plaintiff alleges in its breach of contract claim, (1)

it "contracted with Defendants to obtain a commercial general liability policy to cover its handyman type work;" (2) "a valid, enforceable contract existed between Plaintiff and Defendants;" (3) Plaintiff is a proper party to sue under the insurance policy; (4) Plaintiff performed under the policy as it paid the premiums; (5) "Defendants breached the contract when they denied coverage to Plaintiff after their agent, Defendant Mitchell, represented that the policy contained benefits that it did not have;" and (6) "[b]ecause Defendants did not provide the policy contracted for, Defendants' breach caused Plaintiff's damages." (Dkt. #1-5 ¶¶ 17–21).[9] The Facts section of Plaintiff's Original Petition and Plaintiff's Motion to Remand do not clarify Plaintiff's breach of contract claims (*See* Dkt. #1-5 ¶¶ 9–10; Dkt. #10).[10]

Regardless of whether Plaintiff claims Mr. Mitchell breached the insurance policy by denying Plaintiff's coverage claim or breached a contract to procure appropriate coverage for Plaintiff, the Court cannot reasonably predict that Plaintiff can recover against Mr. Mitchell on either theory. To begin, Mr. Mitchell is not a party to the insurance policy (Dkt. #1-3). *See Mission Grove, L.P. v. Hall*, 503 S.W.3d 546, 551–52 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (quoting *Bernard Johnson, Inc. v. Cont'l Constructors, Inc.*, 630 S.W.2d 365, 369 (Tex. App.—Austin 1982, writ ref'd n.r.e.)) ("As a general rule, a suit for breach of contract may not be maintained against a person who is not a party to the contract . . . ."). Further, as Plaintiff acknowledges, "Atlantic denied coverage to Plaintiff"—not Mr. Mitchell (Dkt. #1-5 ¶ 11). *See New York Life Ins. Co. v. Miller*, 114 S.W.3d 114, 121 (Tex. App.—Austin 2003, no pet.)

---

9. Plaintiff's breach of contract claim is not time barred as "the statute of limitations for a claim for breach of contract is four years." *Albert Lee Giddens, APLC v. Cuevas*, 14-16-00772-CV, 2017 WL 4159263, at *3 (Tex. App.—Houston [14th Dist.] Sept. 19, 2017, no pet.) (citing TEX. CIV. PRAC. & REM. CODE § 16.051; *Stine v. Stewart*, 80 S.W.3d 586, 592 (Tex. 2002) (per curiam)).
10. Atlantic argues that Plaintiff's breach of contract claim is a veiled "failure to procure claim masquerading as a contract action." (Dkt. #16 at p. 3). In a summary inquiry, the Court's role is to "identify the presence of discrete and undisputed facts that would preclude [a] plaintiff's recovery against the in-state defendant." *Smallwood*, 385 F.3d at 573–74. Therefore, the Court will examine Plaintiff's claim as pleaded and determine whether the discrete and undisputed facts preclude Plaintiff from recovering.

(emphasis added) (citations omitted) ("The elements of breach of contract are: (1) that a valid contract existed, (2) that the plaintiff performed or tendered performance, (3) *that the defendant breached the contract*, and (4) that the plaintiff was damaged as a result of the breach." As Mr. Mitchell is not a party to the insurance policy and did not deny Plaintiff's coverage claim, Mr. Mitchell could not breach the insurance policy by denying Plaintiff's coverage claim.

The Court also cannot reasonably predict that Plaintiff can recover on a theory that Mr. Mitchell breached a contract to procure appropriate coverage for Plaintiff. "[F]ailure to procure the requested insurance may give rise to liability for breach of contract." *Aspen Specialty Ins. Co. v. Muniz Eng'g, Inc.*, 514 F. Supp. 2d 972, 983 (S.D. Tex. 2007) (citing *Critchfield v. Smith*, 151 S.W.3d 225, 233 (Tex. App.—Tyler 2004, pet. denied); *Turner-Bass Assocs. of Tyler v. Williamson*, 932 S.W.2d 219, 222 (Tex. App.—Tyler 1996, writ denied)). The following elements are required to form such a contract: "(1) an offer, (2) acceptance in strict compliance with the terms of the offer, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding." *Critchfield*, 151 S.W.3d at 233 (citation omitted). "Consideration is also a fundamental element of every valid contract." *Id.* (citing *Turner-Bass*, 932 S.W.2d at 222). "In determining the existence of an oral contract, the court looks to the communications between the parties and to the acts and circumstances surrounding those communications." *Lloyd Walterscheid & Walterscheid Farms, LLC v. Walterscheid*, 557 S.W.3d 245, 259 (Tex. App.—Fort Worth 2018, no pet.) (citations omitted).

In Mr. Boren's affidavit, attached to the Motion to Remand, Mr. Boren describes his conversation with Mr. Mitchell:

> During our meeting in March 2015, I answered questions asked by
> Mr. Mitchell regarding my business and provided him with a

business card and website. I told him that Adaptive Modifications, LLC provides services to disabled and elderly people to transform their living spaces to accommodate disabilities and other age-related needs as well as handyman services when asked by clients. Adaptive Modifications, LLC's business mission is to promote independent living to people who otherwise would need assistance. I told Mr. Mitchell that Adaptive Modifications, LLC's work is diverse. Adaptive Modifications, LLC mostly provides handyman type work, including limited plumbing work, attaching faucets and toilets, tiling work in bathroom areas, installation of handrails, wall attachments, ramps, and other remodeling work that is required. Most of Adaptive Modifications' work is performed in wet areas of the home.

The meeting with Mr. Mitchell was very short. Mr. Mitchell did not ask very many questions. I perceived that he was looking to take a smoke break after I left his office. His behavior showed that he was unfocused. Mr. Mitchell represented that the general commercial liability insurance policy he would procure for me would cover the type of work Adaptive Modifications, LLC engaged in. I signed the paperwork Mr. Mitchell printed for me and read the policy. This was my first time obtaining general commercial liability insurance for a limited liability company. I relied on Mr. Mitchell and his expertise as an insurance agent to procure the appropriate policy for my business. Mr. Mitchell did not explain the policy, its benefits, and services to me such as what type of work was covered and what was excluded. Mr. Mitchell did not tell me what category he characterized Adaptive Modifications work under. Mr. Mitchell categorized Adaptive Modifications' work as carpentry work. As I have said before, Adaptive Modifications' work is diverse and involves plumbing, installations, and other renovation needs. This kind of work falls under handyman type work and not just carpentry. Instead, Mr. Mitchell assured me that the policy he had procured would cover the work performed by Adaptive Modifications and any resulting damages that occurred. I left Mr. Mitchell's office with the assurances and representations from him that the general commercial liability insurance policy I just signed and purchased would cover Adaptive Modifications, LLC's work and any damages that might occur. At the time, I did not know that the policy only covered carpentry work. I did not know that my business was at risk.

(Dkt. #10-1 ¶¶ 3–4).[11]

Nothing in Mr. Boren's affidavit supports the existence of a written or oral contract between Plaintiff and Mr. Mitchell to procure appropriate insurance coverage. There is no evidence of an offer, acceptance, meeting of the minds, a consent to terms, execution and delivery, intent to be bound, or consideration. Therefore, based on the allegations and evidence provided by Plaintiff, the Court cannot reasonably predict under either contractual theory analyzed that Plaintiff could reasonably recover on its breach of contract claim against Mr. Mitchell.

## CONCLUSION

Based on the preceding discussion, the Court finds that Plaintiff improperly joined the Texas Defendants as there is no reasonable basis for the Court to predict that Plaintiff may recover against these Defendants. It is therefore **ORDERED** that Plaintiff's Motion to Remand is hereby **DENIED** (Dkt. #10). It is further **ORDERED** that Defendants Trimark Insurance Group, Inc.; Delta General Agency Corporation, North Texas Branch; and Dan Mitchell are **DISMISSED WITHOUT PREJUDICE**.

**IT IS SO ORDERED.**
**SIGNED this 29th day of April, 2019.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE

---

11. Notably, Mr. Boren predicts in his affidavit that Plaintiff has valid claims under the Texas Insurance Code, DTPA, and negligence (Dkt. #10-1 ¶¶ 8–10). Mr. Boren does not predict that Plaintiff has a valid breach of contract claim (*See* Dkt. #10-1).